IN THE UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| CKJ INVESTMENTS, LLC, Individually and Derivatively on Behalf of Nominal Defendants, CAPE AUGUSTA, LLC; CAPE AUGUSTA DIGITAL PROPERTIES, LLC; AUGUSTA CYBERWORKS, LLC; AUGUSTA CYBERWORKS 2, LLC; SIBLEY FOUNDERS, LLC; SIBLEY MILL PHASE I LANDLORD, LLC; and SIBLEY MILL MANAGER, LLC. | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | CIVIL ACTION |
| WAYNE MILLAR, M-COMMUNICATIONS LLC MILLAR; ERIC ESHELMAN; JAMES AINSLIE, | ) ) ) ) | NO. _____ |
| Individual Defendants, | ) ) ) ) | |
| and | ) ) | |
| CAPE AUGUSTA, LLC; CAPE AUGUSTA DIGITAL PROPERTIES, LLC; AUGUSTA CYBERWORKS, LLC AUGUSTA CYBERWORKS 2, LLC; SIBLEY FOUNDERS, LLC; SIBLEY MILL PHASE I LANDLORD, LLC; and SIBLEY MILL MANAGER, LLC; | ) ) ) ) ) ) ) ) | |
| Nominal Defendants. | ) | |

## TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................... 3

II.  NATURE OF ACTION ........................................................................... 3

III.  JURISDICITION AND VENUE............................................................. 4

IV.  PARTIES ................................................................................................ 4

V.  FACTUAL BACKGROUND .................................................................. 8

a.  MANAGEMENT CHANGES AND BREACH OF THE OPERATING
AGREEMENT ........................................................................................... 12

b.  CYBERWORKS 2 FACES FINANCIAL PROBLEMS AND MILLAR'S
SELF-DEALING......................................................................................... 16

c.  DEFENDANT'S SELF-DEALING AND PLAINTIFF'S ATTEMPTED
RESOLUTION ........................................................................................... 21

VI.  CAUSES OF ACTION .......................................................................... 24

VII.  PRAYER FOR RELIEF ........................................................................ 36

VIII. PLAINTIFF'S EXHIBIT LIST.............................................................. 39

## I.    INTRODUCTION

Plaintiff CKJ Investments, a minority shareholder of the Nominal Defendant corporations, brings this derivative action on behalf of itself and the Nominal Defendants. All parties in this action were investors who worked together to redevelop two historic Augusta properties—the Sibley Mill and King Mill. This suit centers around the breach of fiduciary duty by Wayne Millar and Eric Eshelman, two other shareholders/officers of the nominal defendants. In their capacities as corporate officers, Millar and Eshelman breached their fiduciary duties by: unlawfully appointing themselves to board positions without membership approval, awarding themselves salaries without membership approval, engaging in self-dealing by obligating Nominal Defendants to unnecessary debt while hiding the fact that they were the beneficiaries of such debt, and acting in other ways such that their self-interest trumped that of the corporations.

## II.    NATURE OF ACTION

COMES NOW, Plaintiffs CKJ Investments, LLC, by and through undersigned counsel, and brings suit both individually and derivatively on behalf of the Nominal Defendants against the above-captioned Individual Defendants, alleging the following:

### III.   JURISDICITION AND VENUE

1.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 whereas there is total diversity of citizenship between the plaintiff and the Defendants and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

2.

This action is properly brought within this Court because the property at issue is all situated in Augusta, Georgia, within the Southern District of Georgia. All or a substantial portion of the actions and omissions complained of herein occurred in Richmond County, within the Southern District of Georgia and each Defendant is found, has an agent, transacts, or conducts business in Richmond County, within the Southern District of Georgia.

### IV.   PARTIES

3.

CJK Investments, LLC is a Delaware limited liability company whose offices are and have been during all times relevant to this action located at 651 Sweetwater Road, North Augusta, SC 29860. CJK Investments is a shareholder-member (either directly or thru its subsidiaries) in all the Nominal Defendant corporate entities.

4.

Cape Augusta, LLC ("Cape Augusta") is a Georgia limited liability company that regularly conducts business in Augusta, Georgia. Upon information and belief, its offices are and at all times material to this action have been located at 2500 Trade Center Drive, Evans, Georgia 30809. Upon information and belief, Cape Augusta can be served through its registered agent Wayne Millar, whose address is 200 Beale Lane, Evans, Georgia 30809.

5.

Cape Augusta Digital Properties, LLC ("Digital Properties") is a Georgia limited liability company that regularly conducts business in Augusta, Georgia. Upon information and belief, its offices are and at all times material to this action have been located at 2500 Trade Center Drive, Evans, Georgia 30809. Upon Information and belief, Digital Properties can served through its registered agent Wayne Millar, whose address is 200 Beale Lane, Evans, Georgia 30809.

6.

Augusta Cyberworks, LLC ("Cyberworks") is a Georgia limited liability company that regularly conducts business in Augusta, Georgia. Upon information and belief, its offices are and at all times material to this action have been located at 2500 Trade Center Drive, Evans, Georgia 30809. Upon information and belief,

Cyberworks can be served through its registered agent Wayne Millar, whose address is 200 Beale Lane, Evans, Georgia 30809.

7.

Augusta Cyberworks 2, LLC ("Cyberworks 2") is a Georgia limited liability company that regularly conducts business in Augusta, Georgia. Upon information and belief, its offices are and at all times material to this action have been located at 2500 Trade Center Drive, Evans, Georgia 30809. Upon information and belief, Cyberworks 2 can be served through its registered agent Wayne Millar, whose address is 200 Beale Lane, Evans, Georgia 30809.

8.

Sibley Founders, LLC ("Sibley Founders") is a Georgia limited liability company that regularly conducts business in Augusta, Georgia. Upon information and belief, its offices are and at all times material to this action have been located at 2500 Trade Center Drive, Evans, Georgia 30809. Upon information and belief, Sibley Founders can be served through its registered agent Wayne Millar, whose address is 200 Beale Lane, Evans, Georgia 30809.

9.

Sibley Mill Phase I Landlord is a Georgia limited liability company that regularly conducts business in Augusta, Georgia. Upon information and belief, its offices are and at all times material to this action have been located at 2500 Trade

Center Drive, Evans, Georgia 30809. Upon information and belief, Sibley Mill

Phase I Landlord can be served through its registered agent Wayne Millar, whose

address is 200 Beale Lane, Evans, Georgia 30809.

10.

Sibley Mill Manager, LLC is a Georgia limited liability company that

regularly conducts business in Augusta, Georgia. Upon information and belief, its

offices are and at all times material to this action have been located at 2500 Trade

Center Drive, Evans, Georgia 30809. Upon information and belief, Sibley Mill

Manager LLC can be served through its registered agent Wayne Millar, whose

address is 200 Beale Lane, Evans, Georgia 30809.

11.

M-Communications, LLC ("M-Comm") is a Georgia limited liability

company, that regularly conducts business in Augusta, Georgia. Upon information

and belief, its principal place of business is located at 2500 Trade Center Drive,

Evans, Georgia 30809. Upon information and belief, M-Comm and can be served

through its registered agent Wayne Millar, who is located at 200 Beale Lane,

Evans, Georgia 30809. M-Comm's majority owner is Wayne Millar.

12.

Wayne Millar ("Millar") is the Chief Executive Officer of Cape Augusta,

Digital Properties, Cyberworks, Cyberworks 2, Sibley Mill Phase I Landlord,

Sibley Founders, Sibley Mill Manager LLC, and M-Comm. He regularly conducts

business in Augusta, Georgia. Upon information and belief, his principal place of

business is located at 2500 Trade Center Drive, Evans, Georgia 30809.

13.

Eric Eshelman ("Eshelman") is the Chief Operating Officer of Cape

Augusta, Cyberworks, Cyberworks 2, and Sibley Mill Phase I. He regularly

conducts business in Augusta, Georgia. Upon information and belief, his principal

place of business is located at 11 Granger Dr. Pinehurst NC 28374

14.

Based on information and belief, James Anslie resides at 403 Musgrave

Road, Evans, GA 30809.

## V.    FACTUAL BACKGROUND

15.

The parties to this action are all investors in companies that are organized

and created to redevelop two historic properties, the Sibley Mill and King Mill, in

Augusta, Georgia. These sites will be converted into mixed-use real estate

developments that will contain data centers, office spaces, residential spaces, and

commercial spaces.

16.

This project was conceptualized in 2014 to take advantage of the growing

cybersecurity and technology market in August, Georgia and as a means to attract

new businesses and members of the cybersecurity workforce to this area.

Additionally, this project was eligible for up to six million dollars ($6,000,000) in

historic and new market tax credits. Further, because the Sibley Mill still has

working turbines, it is capable of generating electricity for used by the future

tenants and to sell back to the electrical grid.

17.

To further these goals and turn these concepts into reality, the parties to this

action and other investors have formed a number of business entities to manage

these projects and raise necessary funds for their completion.

18.

Cape Augusta was one of the first such business entities formed, and its

Articles of Organization were filed on December 10, 2014.

19.

Cape Augusta is owned by four entities. Forty-two and a half percent

(42.5%) of the company is owned by M-Comm. Twenty-five percent (25%) of the

company is owned by Atlantic Beach Head, LLC, a Georgia limited liability

company whose primary owner is James Ainslie ("Ainslie"). Twenty-two and a

half percent (22.5%) of the company owned by the Oxshott Trust, an offshore trust. Finally, ten percent (10%) is owned by Plaintiff CKJ Investments.

20.

On August 5, 2015, Sibley Founders was formed. Sibley Founders has a number of private and institutional investors. Among those investors are M-Comm, which owns five percent (5%) of the company; CKJ Investments, which owns twelve and a half percent (12.5%) of the company; and Eshelman, who owns five percent (5%) of the company.

21.

Together Sibley Founders and Cape Augusta are the two largest partners in the mill rehabilitation and development projects. Cape Augusta's interests in the projects are owned by its wholly owned subsidiary, Digital Properties. Digital Properties was formed on November 11, 2015. The mill redevelopment projects are divided into separate phases and owned and operated by two separate entities, Cyberworks and Cyberworks 2.

22.

Cyberworks owns and manages Phase I of the Sibley Mill redevelopment project. Cyberworks was formed on August 17, 2015 and originally operated under the name Cape Augusta Digital Properties Sibley Mill, LLC. Its name was changed to Cyberworks on July 25, 2017.

23.

As part of the commercial development of Sibley Mill Phase I, a master landlord company and master tenant company were created. The master landlord is Sibley Mill Phase I Landlord. Sibley Mill Phase I Landlord was formed on September 1, 2016. Digital Properties owns ninety-nine percent (99%) of the company and Sibley Mill Manager, LLC owns one percent (1%). Sibley Mill Manager, LLC is a wholly owned subsidiary of Sibley Founders and is the managing member of the company.

24.

Cyberworks 2 was formed on November 13, 2017 to own and manage subsequent development phases at Sibley Mill and all the re-development of the King Mill. It originally operated under the name of EC Sibley Managing Member, LLC, but its name was changed on December 17, 2017 to its current name. Digital Properties owns eighty percent (80%) of the company and Sibley Founders owns twenty percent (20%).

25.

The relationship between the parties (the corporate entities and their members) is outlined in a flowchart. See Exhibit A.

### a. MANAGEMENT CHANGES AND BREACH OF THE OPERATING AGREEMENT

26.

During the initial phases of these development projects, the parties were able to work together, particularly with regard to Sibley Mill Phase I. Portions of the mill were redeveloped for office space and lease agreements with two tenants were obtained. During this phase of the project, Ainslie served as the President and CEO of Cape Augusta, Digital Properties, Cyberworks, Cyberworks 2, and Sibley Mill Manager.

27.

As the project progressed and moved into the next phase of development with Cyberworks 2, some of the individuals associated with the project became dissatisfied with Ainslie's management. In particular, during the fall of 2017. Millar became increasingly vocal about Ainslie's spending on expenses.

28.

Ainslie was able to obtain offers of financing from interested investors during the fall of 2017; however, Millar dismissed these offers out of hand and told Ainslie they were not worth pursuing. Millar and Oxshott Trust form a majority of the shareholders of Cape Augusta, and typically align their interests. Millar was able to disregard Ainslie's investment opportunities because of Oxshott's ongoing

support of his interests. Ainslie was thus unable to obtain additional predevelopment financing for Cyberworks 2.

29.

In December of 2017, Millar informed CKJ Investments LLC that he had replaced Ainslie as the President and CEO of Cape Augusta. There was no meeting of the members to approve this change, despite the fact that the Cape Augusta Operating Agreement provides that the officers of the company must be elected or appointed by the members. See Exhibit B (Cape Augusta Operating Agreement § 9.10).

30.

Additionally, CKJ Investments LLC became aware that Millar was taking a salary as the president and CEO of Cape Augusta, despite the fact that under the operating agreement, members were not entitled to any salary while serving as officers unless that compensation was approved by all of the members. Exhibit B (Cape Augusta Operating Agreement §§ 9.8 and 9.9). There was no meeting or approval regarding Millar's salary as CEO of Cape Augusta. At the same time, CKJ Investments LLC learned that Ainslie, during his tenure as CEO of Cape Augusta, was also taking a salary without approval of any of the members.

31.

Approximately five months later, on May 29, 2018, a joint resolution of the members and managers of Cape Augusta, Cyberworks, Cyberworks 2, as well affiliates of those entities, was adopted that formally replaced Ainslie with Millar as the President and CEO of Cape Augusta, Digital Properties, Cyberworks, Cyberworks 2, and Sibley Mill Manager, LLC. Ainslie was appointed the Chief Investment Officer for Cape Augusta. CKJ Investments LLC never signed this agreement.

32.

At the formation of both Cyberworks and Cyberworks 2, there were unanimous consent actions that designated Ainslie as the President and CEO and Millar as the Chairman of the Board, Vice President, Secretary, and Treasurer. Thus, once Millar replaced Ainslie, Ainslie was the sole member of the board of Cyberworks and Cyberworks 2.

33.

During the December meeting with CKJ Investments LLC, Millar also discussed the need for additional capital for the projects, particularly for predevelopment of Cyberworks 2. Given that the parties had all invested significant amounts of money into the projects and the fact that Cyberworks had been successful in securing two tenants leasing large portions of the building, CKJ

Investments LLC became concerned about how the finances of the organization were being handled.

34.

On multiple occasions following the December meeting, CKJ Investments LLC requested to review the Cape Augusta's financial records, to include records of payroll, expenses, expenditures, accounts payable, and accounts receivable. Millar never provided CKJ Investments LLC access to these records, beyond summarized cash flow statements.

35.

The operating agreements of Cape Augusta and Digital Properties provide that the members are permitted access to the companies' financial records. Exhibit B (Cape Augusta Operating Agreement, § 5.1); Exhibit C (Digital Properties Operating Agreement, § 5.1).

36.

The operating agreements of Cyberworks and Cyberworks 2 provide that the companies must maintain financial records at their principal place of business and that they must provide certain financial reports to the Class A members. Exhibit D (Cyberworks[1] Operating Agreement §§ 9.1 and 9.3); Exhibit E (Cyberworks 2

---

[1] Cyberworks was originally known as "Cape Augusta Digital Properties Sibley Mill LLC" and is referred to as such in the operating agreement.

Operating Agreement §§ 9.1 and 9.3). CKJ Investments is a member of Sibley

Founders, which is a Class A member of Cyberworks and Cyberworks 2.

### b. CYBERWORKS 2 FACES FINANCIAL PROBLEMS AND MILLAR'S SELF-DEALING

#### 37.

Throughout the spring and early summer of 2018, it became increasingly

apparent that Cyberworks 2 was rapidly running out of money to complete

predevelopment work necessary to start construction on the additional phases of

the Sibley Mill and the initial phases of the King Mill. There was a disagreement

as to the right way to raise additional capital for the project.

#### 38.

Ainslie attempted to secure financing from various lenders, while Millar

proposed issuing a convertible note to a group of lenders. The convertible note

would allow the lenders to receive equity grants in the Cyberworks 2 project. The

proposed lender of this note was a group called Augusta Cyberworks 2

Noteholders, LLC ("Cyberworks 2 Noteholders").

#### 39.

Cyberworks 2 Noteholders was formed on May 3, 2018. The registered

agent for Cyberworks 2 Noteholders is Millar. Upon information and belief, Millar

is also a member of Cyberworks 2 Noteholders.

40.

Several of the other members of Cape Augusta, to include Plaintiffs,
objected to the issuance of the convertible note, and specifically to the grant of
additional equity that would at the very least dilute the common shareholders.
Further, the proposed term sheet for the note did not appear to contemplate or
account for the fact that both the Cyberworks and Cyberworks 2 operating
agreements included anti-dilution provisions for the preferred shareholders. These
provisions would have required additional shares to be issued at conversion of the
note to adjust for preferred shareholders dilution. Thus, it appeared that Millar was
prepared to ignore the fact that the note violated the Cyberworks and Cyberworks 2
agreement and harmed the interests of the preferred shareholders.

41.

Additionally, Millar provided no reasoning for some of the terms of the
convertible note to include a conversion cap valuation for Cyberworks 2 of six
million dollars ($6,000,000). This number appeared to be particularly low, given
that Millar had expressed to CKJ Investments LLC previously that he would not
accept a buy-out offer for Millar's interests at that low of a valuation.

42.

Finally, at the time that the discussion of the note was occurring, Plaintiffs were not informed that Cyberworks 2 Noteholders was the potential lender, who the members of that group were, and what intertest Millar had in that group.

43.

Despite the fact that other members objected to the convertible note, Millar wished to move forward with it. Millar went so far as to consult with the company's attorney to confirm that he could move forward with issuing the note and binding Cyberworks 2 without the other members' consent.

44.

Millar's company, M-Comm, also made a total of five loans to three of the entities involved in the projects: Cyberworks, Cyberworks 2, and Sibley Mill Phase I Landlord. See Exhibit F (table of promissory notes issued by M-Comm).

45.

Specifically, three promissory notes were issues to Cyberworks 2.

46.

The first of these notes to Cyberworks 2 was issued on June 8, 2018 in the amount of two-hundred and eighty-eight thousand, one hundred and three dollars and twenty-four cents ($288,103.24). Exhibit G (Promissory Note- Cyberworks 2- June 8, 2018). The lender on this note was M-Comm. Eric Eshelman signed off as

the borrower and listed his title as COO of Cyberworks 2 and Wayne Millar signed

off as the lender. It is unknown how and when Eshelman became the Chief

Operating Officer, as he is not designated as such in any of the organizational

documents.

47.

On August 3, 2018, M-Comm issued another promissory note to

Cyberworks 2 in the amount of one-hundred and sixty-four thousand, four-hundred

and ten dollars ($164,410.00). Exhibit H (Promissory Note- Cyberworks 2- August

3, 2018). Though the lender was again listed as M-Comm, Wayne Millar signed

off as the borrower as well. Graham Ellison, the other owner of M-Comm, signed

off as the lender.

48.

On August 22, 2018, M-Comm issued another promissory note to

Cyberworks 2 for nine-thousand and six-hundred and sixty-four dollars and forty-

four cents ($9,664.44). Exhibit I (Promissory Note- Cyberworks 2- August 22,

2018). Again, the lender was M-Comm and the Wayne Millar signed off as the

borrower. Graham Ellison, the other owner of M-Comm, signed off as the lender.

49.

M-Comm issued two other notes on June 8, 2018. One was to Sibley Mill

Phase I in the amount of  two hundred sixty seven thousand, six hundred forty four

dollars and twenty four cents ($267,644.24). Exhibit J (Promissory Note- Sibley

Mill Phase I- June 8, 2018). The other was to Cyberworks for sixty-six thousand,

nine-hundred ninety-three dollars and sixty five cents ($66,993.65). Exhibit K

(Promissory Note- Cyberworks- June 8, 2018). M-Comm was the lender for both

notes and Eric Eshelman signed off as the COO for the borrower while Millar

signed off as the lender.

50.

There is no record of board approval for any of these promissory notes. The

operating agreements of Cyberworks 2 requires board approval for incurring any

indebtedness in excess of two hundred and fifty thousand dollars ($250,000).

Exhibit E (Cyberworks 2 Operating Agreement § 5.1(c)(4)).

51.

The Sibley Mill Phase I Landlord operating agreement explicitly prohibits

the company from receiving loans from any "developer entity." Exhibit L (Sibley

Mill Phase I Landlord Operating Agreement § 8.10). A developer entity is defined

in the operating agreement as the managing member or its affiliates. The managing

member is Sibley Mill Manager, LLC, of which Millar is the President and CEO.

Per the definitions of the Sibley Mill Phase I Landlord Operating Agreement, an

affiliate includes a person who is an officer or managing member of Sibley Mill

Manager, LLC. Millar is also the controlling member of M-Comm. Thus, the loan

from M-Comm violated the terms of the Sibley Mill Phase I Landlord Operating Agreement because they came from an affiliate of a developer entity.

52.

During June and July of 2018, Millar attempted to hold multiple shareholder meetings on the issue of the convertible note, but each time failed to properly comply with the notice requirements for such meetings.

### c.  DEFENDANT'S SELF-DEALING AND PLAINTIFF'S ATTEMPTED RESOLUTION

53.

Becoming increasingly concerned at Millar's willingness to act on both sides of transactions and fearing that Millar would unilaterally execute the convertible note and irreparably harm the interests of Plaintiffs, Plaintiffs offered terms to be bought out of their interests in the companies.

54.

Initially, Millar seemed willing to do this, and a tentative agreement on the terms of the buy-out was reached. However, Millar has failed to pursue the buy-out offer.

55.

On May 28, 2019, CKJ Investments, thru its attorney, sent a demand letter (pursuant to O.C.G.A. § 14-11-801) to the other controlling members of the

entities. See Exhibit M (CKJ Investments Demand Letter). Therein, CKJ

Investments detailed the same issues which are raised in this complaint, including:

Ainslie and Millar taking salaries as corporate officers without approval, Millar's

unilateral decision to appoint himself CEO of Cape Augusta, Millar's unilateral

decision to engage in self-dealing through the use of notes for which he was the

beneficiary, and CKJ's numerous requests to review the financial records of the

corporations involved. CKJ requested that Cape Augusta LLC dismiss Millar as

President and as an officer for any of its subsidiaries, that the corporation seek

causes of action against Millar for his breach of fiduciary duty against Cape

Augusta and its subsidiaries, and other remedies.

56.

This demand letter was sent to Nominal Defendants' counsel (Ken Daniel

and Andy Tisdale); Digital Properties; Augusta Cyberworks; Augusta Cyberworks

2; Sibley Founders LLC; Sibley Mill Phase I Landlord; Sibley Mill Manager LLC;

M-Comm; Eric Eshelmen; and James Ainslie. See Exhibit M (CKJ Investments

Demand Letter) and Exhibit N (certified mail receipts for the above

persons/entities).

57.

None of the remedies requested in the Demand Letter were provided.

58.

Plaintiff, as a member of these corporate entities (either directly or through its subsidiaries), attempted to resolve these issues through the corporate process and its Demand Letter. Pursuant to O.C.G.A. § 14-11-801, it has been more than 90 days since Plaintiff has sent this Demand Letter and files a derivative action.

59.

Plaintiff is concerned that Millar will attempt to engage in further self-dealing by binding the Nominal Defendants to more unnecessary debt. This action would irreparably harm the Plaintiffs individual, as well as the interests of the shareholders of Sibley Founders and Cape Augusta, by diluting the shareholders' interests without their consent. This concern is particularly justified given Millar's recent history of willingness to act unilaterally and in contravention of the companies' operating agreements.

60.

After staying the issuance of a convertible note in 2018, Millar has again decided, in gross violation of the Operating Agreement and without the consent of the shareholders to issue a convertible note and dilute the current shareholders interest.

## VI.   CAUSES OF ACTION

## COUNT I – DECLARATORY JUDGMENT BREACH OF FIDUCIARY

## DUTY AS TO DEFENDANT MILLAR

### 61.

Plaintiffs incorporate, as if fully set forth herein, the allegations in the preceding paragraphs of this Complaint.

### 62.

As an officer and board member of Cape Augusta, Digital Properties, Cyberworks, Cyberworks 2, Sibley Mill Manager, and Sibley Founders, Millar had a fiduciary duty to act in the best interests of the companies and their shareholders.

### 63.

Millar breached his fiduciary duty to Cape Augusta by appointing himself CEO and taking a salary without full board approval—as required by Cape Augusta's operating agreement. He also breached his fiduciary duty by withholding access of Cape Augusta's financial records from the other shareholders as part of a scheme to cover up these payments.

### 64.

Millar breached his fiduciary duty to Cyberworks, Cyberworks 2, and Sibley Mill Phase I by engaging in self-dealing when he obligated the companies to unnecessary debt in order to further his own self-interest.

65.

The companies and Plaintiffs have been damaged in an amount to be proven at trial by Millar's actions through the loss of business opportunities, loss of assets, and by incurring additional unauthorized debt and interest.

66.

The Plaintiffs and Nominal Defendants are entitled to a declaratory judgment that Millar has breached his fiduciary duties to Plaintiffs and Nominal Defendants.

## COUNT II – DECLARATORY BREACH OF FIDUCIARY DUTY AS TO DEFENDANT M-COMMUNICATIONS, LLC

67.

Plaintiffs incorporate, as if fully set forth herein, the allegations in the preceding paragraphs of this complaint.

68.

As a member of Cape Augusta and Sibley Founders, M-Comm owed fiduciary duties to its fellow members.

69.

M-Comm's controlling member, Millar, served as the sole board member for Cape Augusta and Cyberworks 2, in which Cape Augusta owned a controlling interest through Digital Properties. M-Comm's controlling member, Millar, also

served as the sole board member for Sibley Mill Manager, which controlled Sibley Mill Phase I Landlords.

70.

M-Comm, at the behest of Millar, provided unauthorized loans to Cyberworks 2 and Sibley Mill Phase I Landlords in violation of those entitities' operating agreements.

71.

These transactions constituted self-dealing as Millar was both M-Comm's controlling member and the sole board member of Cyberworks 2 and Sibley Mill Phase I Landlords. Cyberworks 2 and Sibley Mill Phase I Landlords effectively had no representation of their interests during these transactions.

72.

Nominal Defendants Cape Augusta, Digital Properties, Sibley Founders, Cyberworks 2, Sibley Mill Phase I Landlord, and Sibley Mill Managers and Plaintiffs have been damaged in an amount to be proven at trial, pursuant to the terms of the companies' agreements, by M-Comm's actions through incurring additional unauthorized debt and interest.

73.

The Plaintiffs and Nominal Defendants Cape Augusta, Digital Properties, Sibley Founders, Cyberworks 2, Sibley Mill Phase I Landlord, and Sibley Mill

Managers are entitled to a declaratory judgment that M-Comm breached its fiduciary duties to them.

## COUNT III- CONSTRUCTIVE FRAUD AS TO DEFENDANT MILLAR

74.

Plaintiffs incorporate, as if fully set forth herein, the allegations in the preceding paragraphs of this Complaint.

75.

Defendant Millar engaged in constructive fraud by using his membership in Cape Augusta, Cyberworks, and Cyberworks 2 to unilaterally obtain promissory notes for which he would financially benefit contrary to his fiduciary duties to those entities, the financial interest of those entities, and the operating agreements of those entities.

76.

As a result of Defendant Millar's actions, Plaintiff and Nominal Defendants Cape Augusta, Cyberworks, and Cyberworks 2 were damaged in an amount to be determined at trial.

77.

The Plaintiffs and Nominal Defendants Cape Augusta, Cyberworks, and Cyberworks 2 are entitled to a declaratory judgment that Defendant Millar engaged in constructive fraud against them.

## COUNT IV – DECLATORY JUDGMENT AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AS TO DEFENDANT ERIC ESHELMAN

78.

Plaintiffs incorporate, as if fully set forth herein, the allegations in the preceding paragraphs of this Complaint.

79.

Eshelman knew that as an officer of Cyberworks 2 and Sibley Mill Phase I Landlord, Millar owed a fiduciary duty to the companies and their shareholders.

80.

Without authority, Eshelman signed certain promissory notes on behalf of Cyberworks 2 and Sibley Mill Phase I Landlord purporting to create indebtedness of those companies to M-Comm, a company owned by Millar.

81.

Eshelman did these acts with knowledge of the fiduciary duties owed to Cyberworks 2 and Sibley Mill Phase I Landlord's and the companies' rights to fair dealing and arms-length transactions.

82.

Eshelman did these acts with intent to interfere with those duties and rights.

83.

By doing these acts, Eshelman procured a breach of Millar's fiduciary duty to Cyberworks 2 and Sibley Mill Phase I Landlord.

84.

Eshelman's actions have damaged Plaintiffs individually and the shareholders of Cyberworks 2 and Sibley Mill Phase I Landlord in an amount to be prove at trial, pursuant to the terms of the companies' agreements.

## COUNT V – TEMPORARY PROTECTIVE ORDER AND PRELIMINARY INJUNCTION

85.

Plaintiffs incorporate, as if fully set forth herein, the allegations in the preceding paragraphs of this Complaint.

86.

Millar's actions and breaches of his fiduciary duty have already caused harm to Plaintiffs individually and to the shareholders of the Nominal Defendants.

87.

Millar's previous history of acting unilaterally in breach of his fiduciary duties, and the fact that he has already formulated a plan to act unilaterally with respect to executing the convertible note, put the Plaintiffs individually and as

shareholders of the Nominal Defendants Cyberworks 2, Sibley Founders, Digital Properties, and Cape Augusta at substantial risk of irreparable harm.

88.

Should Millar act unilaterally to issue the convertible note, Plaintiffs and Nominal Defendants will suffer irreparable harm from dilution of their shares in Cyberworks 2. Further, given Millar's likely involvement with Cyberworks 2 Noteholders, LLC, Defendants will suffer irreparable harm from Millar's failure to act in the company's best interest, to fully explore all possible avenues of financing, and to obtain the best deal possible for the company.

89.

A temporary restraining order and preliminary injunction is necessary at this stage to preserve the status quo and prevent Millar from taking damaging unilateral action. Injunctive relief will allow the Plaintiffs and Nominal Defendants time to seek remedies in this litigation and avoid irreparable harm. These operating agreements specifically contemplate the parties' ability to seek injunctive relief in a court of competent jurisdiction.

90.

At this stage, since Cyberworks 2 is still in a predevelopment phase, the risk of injury to Plaintiffs and the Nominal Defendants Cyberworks 2, Sibley Founders, Digital Properties, and Cape Augusta is minimal since construction has not yet

begun. The project is not in the middle of construction and at risk of major defaults on construction contracts if halted at this point. Without an injunction or a temporary restraining order, the Plaintiffs and Nominal Defendants would suffer irreparable harm—namely, they would incur unnecessary, permanent debts and have their membership interests diluted going forward. An injunction or temporary restraining order would maintain the status quo.

91.

Plaintiffs and Nominal Defendants have a high likelihood of success on the merits as shown in the facts alleged in the previous paragraphs. Millar has engaged in self-dealing, breached his fiduciary duty, engaged in constructive fraud, and has directly violated terms of the Nominal Defendants' operating agreements. Further, he has failed to disclose material conflicts of interest to the parties.

92.

Granting injunctive relief will not be a disservice to the public interest. These are private developments and private parties. Granting injunctive relief will re-enforce the principle that officers of a company owe fiduciary duties to their shareholders.

93.

Plaintiffs therefore request that this Court issue a temporary restraining order and set this matter down for a hearing at the earliest opportunity for issuance of a

preliminary injunction. Plaintiffs request that the restraining order and preliminary injunction restrain Millar from executing any debt instrument or security on behalf of any of the Nominal Defendants that would be binding on the Nominal Defendants, until such time as the parties can resolve this.

## COUNT VI – ACCOUNTING

94.

Plaintiffs incorporate, as if fully set forth herein, the allegations in the preceding paragraphs of this Complaint.

95.

Plaintiffs are entitled to an accounting, both under the terms of the relevant operating agreements, and as representatives for the Nominal Defendants. Plaintiffs are entitled to review the financial records of the Nominal Defendants from their inception through and including the date of any hearing on the injunctive relief is requested.

96.

This accounting should include 1) records of all expenses, disbursements, salaries, benefits, and payments made by all of the Nominal Defendants to any person or entity; 2) records of all payments, revenues, loans, or other income received by the Nominal Defendants; 3) records of all accounts payable by any of

the Nominal Defendants; and 4) records of all accounts receivable by the nominal

defendants.

97.

This accounting is a necessary part of Plaintiffs injunctive relief. It is

essential to protection Plaintiffs and the Nominal Shareholders' rights and to

determining what other breaches of fiduciary duty have occurred. Such information

is necessary to determine what additional matters, if any, need to be included in the

Court's injunctive relief.


**COUNT VII – APPOINTMENT OF A RECEIVER**

98.

Plaintiffs incorporate, as if fully set forth herein, the allegations in the

preceding paragraphs of this Complaint.

99.

To protect the status quo and ensure an accurate accounting of Nominal

Defendants financial statements occurs, this Court must appoint a receiver to

safeguard the assets of the Nominal Defendants.

100.

Plaintiffs and Nominal Defendants cannot be fully protected by allowing

Millar to continue in control of Nominal Defendants. Nominal Defendants need a

neutral and responsible party to manage their affairs and protect their assets during

the pendency of this action.

## COUNT VIII – ACTUAL FRAUD AS TO DEFENDANTS AINSLIE AND

## MILLAR

### 101.

Plaintiff hereby incorporates the allegations contained in the preceding

paragraphs by reference as if fully restated.

### 102.

While serving as the Chief Executive Officer of Cape Augusta, LLC, neither

defendant Ainslie or Millar was permitted to draw a salary without full consent of

the shareholders.

### 103.

Both Ainslie and Millar were more than aware of that term of the agreement.

### 104.

Both Ainslie and Millar intentionally and with malice and scienter drew

salaries from Cape Augusta LLC without any consent of the shareholders.

### 105.

Both Ainslie and Millar knew they would draw salaries without the full consent of the shareholders at the time they agreed not to draw salaries without the full consent of the shareholders.

106.

The drawing of said salaries actually and proximately caused the Plaintiff damages.

## COUNT IX-REMOVAL OF MILLAR AS OFFICER

107.

Plaintiff hereby incorporates the allegations contained in the preceding paragraphs by reference as if fully restated.

108.

The Operating Agreement of Cape Augusta LLC provides for the removal of an officer if said officer engages in fraud.

109.

As alleged in the preceding count, the current CEO Wayne Millar has engaged in fraud and should be removed from his office as CEO of Cape Augusta LLC and its subsidiaries.

## COUNT X – ATTORNEY'S FEES AS TO DEFENDANT MILLAR

110.

Plaintiffs incorporate, as if fully set forth herein, the allegations in the preceding paragraphs of this Complaint.

111.

Plaintiffs have sought a reasonable solution to these issues, but Millar has failed to act in good faith, has been stubbornly litigious, and has caused Plaintiffs unnecessary trouble and expense.

112.

Accordingly, this Court should order Millar to pay Plaintiff's their reasonable attorney's fees for having to pursue this action.

## VII.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand and pray for:

1) Declaratory judgment that Millar and M-Comm breached their fiduciary duties to Plaintiffs and the Nominal Defendants.

2) Declaratory judgment that Millar engaged in constructive fraud against the Plaintiffs and the Nominal Defendants.

3) Declaratory judgment that Eshelman aided and abetted Millar and M-Comm in the breach of their fiduciary duties to Plaintiffs and Nominal Defendants.

4) A temporary restraining order to issue and, after a hearing on the matter a preliminary injunction prohibiting Millar from executing any debt instrument or security on behalf of any of the Nominal Defendants that would be binding on the Nominal Defendants;

5) An accounting of the financial records of the Nominal Defendants from their inception through any hearing on this matter. Such accounting should include:

   a. Records of all expenses, disbursements, salaries, benefits, and payments made by all of the Nominal Defendants to any person or entity;

   b. Records of all payments, revenues, loans, or other income received by the Nominal Defendants;

   c. Records of all accounts payable by any of the Nominal Defendants; and

   d. Records of all accounts receivable by the nominal defendants.

   e. Records of all payments made to all officers, employees, agents, or assigns, and

6) Declaratory judgment that Defendant Millar and Ainslie engaged in actual fraud against Plaintiff and Nominal Defendants.

7) An award for damages against defendant Ainslie;

8) An award for damages against defendant Millar;

9) Appointment of a receiver to safeguard the assets of the Nominal

Defendants;

10)   The Plaintiffs reasonable attorney's fees; and

11)   Any such other just and equitable relief as determined by this Court.

Respectfully submitted this 17th day of April, 2020.

/s/ Samuel A. Emas
Samuel A. Emas
Attorney for Plaintiff
Ga Bar No.: 112277

HUNTER RHODES LLC
266 Greene Street
Augusta, GA 30901
semas@hunterrhodes.com
706-724-3156

/s/ Joseph T. Rhodes
Joseph T. Rhodes
Attorney for Plaintiff
Ga Bar No.: 309847

HUNTER RHODES LLC
266 Greene Street
Augusta, GA 30901
706-724-3156
jrhodes@hunterrhodes.com